# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

CIVIL ACTION NO. 17-160-DLB

CHRISTOPHER RANSOM                                       PLAINTIFF

vs.                     **MEMORANDUM OPINION & ORDER**

NANCY A. BERRYHILL, Commissioner
of Social Security Administration                           DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will affirm the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2014, Plaintiff Christopher Ransom applied for disability insurance benefits ("DIB"), alleging disability beginning on February 8, 2013. (Tr. 574, 598). Plaintiff was forty-one-years old at the time of the alleged disability onset date, and he alleged that he was unable to work due to a back injury. *Id*.

Plaintiff's application was denied initially, and again on reconsideration. (Tr. 482-492; 495-506). At Plaintiff's request, an administrative hearing was conducted on April 21, 2016, before Administrative Law Judge ("ALJ") Andrew Gollin. (Tr. 58-102). On June 16, 2016, ALJ Gollin ruled that Plaintiff was not entitled to benefits. (Tr. 40-57). This decision became the final decision of the Commissioner on August 18, 2017, when the

Appeals Council denied Plaintiff's request for review. (Tr. 1-7). In denying review, the Appeals Council also declined to consider new medical evidence submitted by the Plaintiff because it did "not show a reasonable probability that it would change the outcome of the decision." (Tr. 2).

Plaintiff filed the instant action on September 13, 2017, alleging the ALJ's decision "was contrary to law" and applied "incorrect standards." (Doc. # 1 at 2). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 13 and 18).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).

Put another way, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan*, 474 F.3d at 833 (citing *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 772.

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. The burden of proof rests with the claimant on Steps One through Four. As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 8, 2013, the alleged onset date of disability. (Tr. 45). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: lumbar disc displacement and bulging; degenerative disc disease of the lumbar spine status post anterior fusion of L5-S1. *Id.* The ALJ also determined that Plaintiff had one non-severe impairment: depression. (Tr. 45-46). At Step Three, the ALJ concluded that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 47).

At Step Four, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform work at the light exertional level, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> The claimant is limited to lifting/carrying no more than 15 pounds occasionally and 10 pounds frequently. The claimant is limited to standing/walking for no more than one hour at a time and for a total of no more than five hours in an eight-hour workday. The claimant is limited to sitting for no more than one hour at a time and for a total of no more than six hours in an eight-hour workday. The claimant is limited to no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling. The claimant is limited to no climbing of ropes, ladders, or scaffolds. The claimant is limited to no work involving concentrated exposure to vibration. The claimant is limited to no work involving hazardous machinery or equipment and no work involving unprotected heights.

(Tr. 47). Based on this RFC and relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was not able to perform his past relevant work as a forklift operator, material handler, or mixer. (Tr. 52). Therefore, the ALJ proceeded to Step Five where he determined that there were other jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. (Tr. 28-29). Specifically, the ALJ determined that the Plaintiff could perform the following occupations: cashier, general office clerk, or rental clerk. (Tr. 53).

Although the determination that jobs at the light exertional level existed in significant numbers in the national economy was sufficient to conclude the analysis, the ALJ also considered the Plaintiff's job prospects if he had the RFC to perform work at the sedentary exertional level. *Id.* "Even if the [Plaintiff was] further limited to sedentary work with the other restrictions identified" in the RFC, the ALJ found that "he would still be able

4

to perform a significant number of jobs in the national economy. *Id.* Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act. *Id.*

### C. Analysis

Plaintiff advances four arguments in his Motion for Summary Judgment. (Doc. # 13). First, Plaintiff claims that the ALJ erred in weighing the medical-opinion testimony. (Doc. # 13-1 at 17). Second, Plaintiff appears to argue that the ALJ erred in assessing his credibility. *Id.* at 2-5, 15. Third, Plaintiff advances a general argument that the RFC is not supported by substantial evidence. *Id.* at 13-16. And lastly, the Plaintiff suggests that remand is appropriate under Sentence Six because he has presented new, material evidence. *Id.* at 18. The Court will consider each argument in turn.

#### *1. The ALJ did not err in weighing the medical-opinion testimony.*

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1527. A treating source is the claimant's "own acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*; *see also Abney v. Astrue*, No. 5:07-cv-394-KKC, 2008 WL 2074011, at *11 (E.D. Ky. May 13, 2008). A non-treating source is an acceptable medical source who has examined the claimant, but does not have an ongoing treatment relationship with her, while a non-examining source has provided medical or other opinion evidence in the case without examining the claimant. *Id.*

The Plaintiff takes issue with the ALJ's decision to accord any weight to the medical opinion testimony of Dr. Sadler, a non-examining source, as well as the ALJ's decision to give only some weight to the testimony of Dr. Wunder, a non-treating, examining source. (Doc. # 13-1 at 14-15, 17). The Plaintiff also challenges the ALJ's alleged "rejection" of Dr. Jacquemin's medical opinion. The Court will address the ALJ's assessment of each doctor's medical-opinion evidence in turn.

### a. Dr. Jacquemin

First, it is unclear whether Dr. Jacquemin is a treating source or a non-treating, examining source. The record characterizes Plaintiff's relationship with Dr. Jacquemin as a consultation with a new orthopedic surgeon, but it appears that the Plaintiff visited Dr. Jacquemin several times. Therefore, the Court will assume that Dr. Jacquemin qualifies as a treating source and analyze his medical opinion accordingly.

A treating source's opinion is entitled to controlling weight if it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). If a treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.* The ALJ must provide "good reasons" for giving less than controlling weight to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). Specifically, a decision

denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The "treating physician rule" only applies to *medical* opinions. While a medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as claimant's residual functional capacity or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010) (internal citations omitted).

Plaintiff does not contest the ALJ's weighing of Dr. Jacquemin's medical opinion,[1] instead he argues that the "ALJ rendered his denial based upon his rejection of an objective fact … that [Plaintiff] did not have a psuedoarthrosis or a non-union of the vertebrae." (Doc. # 13-1 at 14, 17). The Plaintiff's claim that the ALJ "rejected" Dr. Jacquemin's opinion, however, is belied by the record. In his review of the medical

---

[1] Because Plaintiff has not made such an argument, it is deemed waived. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) ("[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"); *see also Privett v. Colvin*, No. 6:14-cv-113-DLB, 2015 WL 1281725, at *2 (E.D. Ky. Mar. 20, 2015) ("If the Court were to scour the record to determine if these claims have merit, it would set a precedent that plaintiffs in this district can merely file a boilerplate brief raising every possible basis for remand under the sun, in hopes that one shines through. Such a process would undermine the ALJ's role, waste judicial resources, and be completely at odds with the appropriate standard of review.").

7

evidence, the ALJ noted that the Plaintiff had "underwent consultation with a new orthopedic surgeon, Dr. John Jacquemin, who has recommended the claimant pursue a spina cord stimulator or a revision surgery of his fusion surgery due to a suspected non-union of the L5-S1 vertebrae." (Tr. 49). Thus, the ALJ did not ignore or reject that evidence. Instead, the ALJ relied on Dr. Jacquemin's findings to accord lesser weight to Dr. Wunder's inconsistent clinical findings. (Tr. 50). In fact, the ALJ's Hearing Decision discusses Dr. Jacquemin's findings throughout his analysis of the record evidence. (Tr. 49-50 at n.7, 8). Therefore, the Court finds that the ALJ appropriately considered—and did not reject—Dr. Jacquemin's medical opinion.[2]

### b. Dr. Wunder

Unlike testimony from a treating source, the medical-opinion evidence from a non-treating source is usually not entitled to as much weight. 20 C.F.R. § 404.1527(c)(2). However, "[a]s a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also* 20 C.F.R. § 404.1527(c)(1). That said, "opinions from non-treating and non-examining sources are never assessed for 'controlling weight.'" *Id.* at 376.

Thus, when determining how much weight to accord a non-treating physician's opinion, the ALJ is guided by the 20 C.F.R. § 404.1527(d)(2) factors. *Davenport v. Astrue*, No. 3:06-cv-402, 2008 WL 641131 at *6 (S.D. Ohio Mar. 4, 2008). Accordingly, the ALJ

---

[2] To the extent the ALJ did discount any portion of Dr. Jacquemin's opinion, the ALJ provided good reasons for doing so and reached a conclusion that is supported by substantial evidence. (Tr. 50 n.7) ("Dr. Jacquemin also indicated there was probable non-union of the claimant's L5-S1 fusion based on his review of the radiological studies form late 2015 and early 2016, although this finding does not appear in any of the radiolofical reports, including the lumbar CT study ordered by Dr. Jacquemin himself, and these reports also note interval healing and stable surgical changes at the L5-S1 level.").

8

must consider: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*; 20 C.F.R. § 404.1527(c)(2). The ALJ reserves the right to evaluate the claimant's RFC and to apply vocational factors. 20 C.F.R. § 404.1527(d)(2). However, the ALJ must give his reasons for the weight he assigns each medical opinion. SSR 96-5p, 1996 WL 362206 (July 2, 1996).

Dr. Wunder examined Plaintiff once—after the administrative hearing. (Tr. 51). Therefore, Dr. Wunder is a non-treating but examining source. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (citing 20 C.F.R. § 404.1502). Although the Plaintiff repeatedly refers to Dr. Wunder as a "highly qualified disability examiner," (Doc. # 13-1 at 17), the ALJ detailed his reasons for according Dr. Wunder's opinion only "some weight." (Tr. 51). Specifically, the ALJ explained that Dr. Wunder's assessment received only "some weight" for several reasons:

> After his post-hearing exam of the claimant at the request of the claimant's attorney, Dr. Wunder reported the claimant was severely limited to the point he could stand, walk, and sit for a total of no more than four hours per eight-hour workday. On factor limiting the weight assigned to Dr. Wunder's report is that he heavily relied upon his clinical findings that are, as noted earlier, inconsistent with the clinical findings from every other medical provider on record, including findings from two orthopedic surgeons—one of whom [Dr. Jacquemin] examined the claimant a week after Dr. Wunder. This included recording pain behaviors, gait abnormalities, decreased reflexes, and bilateral straight leg raise findings that are not present on other exams. The undersigned also notes that Dr. Wunder also appeared to rely heavily on the claimant's subjective reports that he did very poorly after his spinal surgery in mid-2013 despite multiple treatment records stating the claimant reported near total relief of his back pain and total resolution of his radicular symptoms for nearly a year following his surgery. In addition, Dr. Wunder's opinion statement contains some internal inconsistencies, i.e., he first reports that the use of a cane is not medically necessary for ambulation and then shortly thereafter states that the claimant cannot ambulate without a

9

> wheelchair, walker, cane, or crutches. This decision nevertheless gave Dr. Wunder's opinion some weight because the evidence does show some deterioration in the claimant's condition since Dr. Sadler reviewed the record, but not nearly to the extent asserted in Dr. Wunder's opinion statement.

(Tr. 51) (internal citations omitted).

This explanation, which highlights external inconsistencies and internal inconsistencies, is more than sufficient under 20 C.F.R. § 404.1527(d)(2). Therefore, the Court finds no error in the ALJ's assessment of Dr. Wunder's medical opinion.

### c. Dr. Sadler

Dr. Sadler, a non-examining source, conducted a consultative review of Plaintiff's medical condition in August 2014. (Tr. 50). Dr. Sadler found that Plaintiff "was limited to light work with minor postural restrictions and a restriction on his exposure to hazards." *Id.* In his Motion for Summary Judgment, the Plaintiff seems to suggest that the ALJ erred by relying on Dr. Sadler's medical opinion because she did not review all of the medical evidence. (Doc. # 13-1 at 15). That argument is meritless.

First, the ALJ accorded only "some weight" to Dr. Sadler's opinion. (Tr. 50). Furthermore, the ALJ explicitly recognized that the Plaintiff's condition had experienced "some worsening since Dr. Sadler reviewed the record," which was supported by objective evidence of medical imaging, and therefore, the ALJ appropriately discounted Dr. Sadler's assessment. *Id.* Although the ALJ determined that such "worsening merit[ed] further restrictions of the [Plaintiff's] functioning as described in the residual functional capacity," the ALJ concluded that "the record at the hearing level [did] not merit greater limitation." (Tr. 50-51). Because the ALJ detailed his reasons for giving Dr. Sadler's opinion some weight in accordance with 20 C.F.R. § 404.1527(c), the Court finds

no error in the ALJ's weighing of Dr. Sadler's medical opinion.

### 2. The ALJ did not err in assessing Plaintiff's credibility.

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

If the Plaintiff's complaints regarding the intensity and persistence of his symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting SSR 96-7p, 1996 WL 374186 at *4). "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 248.

After making a credibility determination, the ALJ must explain that decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight."

11

20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. "Blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that conclusion. *Id.*

While not argued directly, the Plaintiff's Motion for Summary Judgment expends a significant amount of time paraphrasing and regurgitating—and occasionally attempting to supplement—his hearing testimony, and thus, appears to take issue with the ALJ's credibility determination. (Doc. # 13-1 at 2-6). In addition, the Plaintiff asserts that he "vehemently disputes" the contents of Dr. Kakarlapudi's treatment notes (Doc. # 13-1 at 15-16), which reported that Plaintiff was "doing great with very minimal, if any back pain and no radicular symptoms." (Tr. 48-49). The Plaintiff also takes issue with the thoroughness of the ALJ's questioning at the administrative hearing, claiming that the ALJ should have provided Plaintiff the opportunity to clear up potential inconsistencies or misconceptions about Plaintiff's attempt to go to school and the reasons that plaintiff switched pain-management practices. (Doc. # 13-1 at 15-16). Any alleged error with the ALJ's credibility determination is belied by the record.

At Step Four, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 48). However, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms" were not credible because they were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ thoroughly explained why Plaintiff's symptoms were inconsistent with the

medical evidence:

> While the claimant denied any improvement after his spinal fusion, these claims are notably inconsistent with the available medical records. The claimant indeed reported feeling "miserable" with sever back pain prior to his spinal fusion surgery [on] July 29, 2013. However, the claimant told his orthopedic surgeon, Dr. Kakarlapudi, that he was doing great with "very minimal, if any" back pain and no radicular symptoms. Dr. Kakarlapudi recorded similar statements from the claimant on four separate occasions between September 11, 2013, and January 22, 2014. The claimant additionally made similar statements [to] other medical providers during an emergency room visit on February 5, 2014.
>
> Treatment notes indicate the claimant began complaining of back pain again in mid-2014, but these reports are similarly inconsistent with claimant's allegations in this case. The fre pain management records from 2014 note that the claimant reported some back pain with non-dermatomal right thigh pain about once per week. The claimant then switched pain management practices in early 2014 for reasons that are not entirely clear. When the claimant first met with his new pain management physician, Dr. Atluri, in January 2015, Dr. Alturi prescribed a conservative pain medication regimen—5 mg Percocet, twice per day—for reports of back pain radiating to his left him. Dr. Alturi's practice then maintained the claimant on the same conservative medication regiment until at least December 2015. IT was not until the claimant began complaining of increased pain radiating to his left hip/thigh in late December 2015 or early 2016 that his medical provider(s) increased his medication dosage. The claimant also underwent consultation with a new orthopedic surgeon, Dr. John Jacquemin, who has recommended the claimant pursue a spinal cord stimulator or a revision surgery of his fusion surgery due to a suspected non-union of the L5-S1 vertebrae.
>
> Other reports throughout the medical record undermine the claimant's allegations that he has been bedridden since the alleged onset date. For example, the claimant told Dr. Kakarlapudi in January 2014 that he was "going back to school" and trying to find a new less rigorous job. The claimant similarly told a nurse from his pain clinic in mid-2014 that he "recently started class for business management." Even the claimant's own pre-hearing reports conflict with the testimony that he and [his significant other] offered at the hearing. The claimant, for instance, noted that he regularly walked around his house throughout the day to avoid getting stiff in a report[ ] filed in March 2014. The claimant additionally reported that he would "occasionally go out for a little while," prepare simple meals, shop for groceries twice per month, take care of pet dogs, wash some dishes, sit on his porch on a daily basis, and occasionally visit family and friends.

> In addition to these reports conflicting with the claimant's testimony, the objective medical evidence from the treatment record is not entirely consistent with his claims…

(Tr. 48-49) (internal citations and quotation marks omitted).

As detailed above, the ALJ found that Plaintiff's activities of daily living and the objective medical evidence did not comport with Plaintiff's allegations of pain and limitation. Therefore, the ALJ concluded that Plaintiff's statements regarding the intensity, frequency, and limiting effects of his symptoms were not entirely credible. Having reviewed the ALJ's credibility assessment, which carefully detailed the inconsistencies between Plaintiff's daily activities, subjective complaints of pain, and the objective medical evidence, the Court finds no error.

### 3. The ALJ's RFC findings are supported by substantial evidence.

A RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that he finds credible in the RFC assessment. *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The Plaintiff generally complains that the ALJ's RFC determination is not supported by substantial evidence. (Doc. # 13-1 at ). In support of this vague complaint, the Plaintiff advances two arguments. Each argument will be address in turn.

First, the Plaintiff suggests that it is easy to "cherry pick some inconsistencies" in any voluminous medical record and "use that against a claimant." (Doc. # 13-1 at 17). *Id*. at 13. This argument amounts to an allegation that the ALJ engaged in selective inclusion of certain evidence to support his RFC finding. Such an "allegation is seldom successful," however, "because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). That is not the role of this Court. "When deciding under 42 USC § 405(g) whether substantial evidence supports the ALJ's decision, [courts] do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Despite the "quite deferential" standard of review, the ALJ must still make all determinations "based upon the record in its entirety." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). When constructing a claimant's RFC, the ALJ must take into account all relevant medical and other evidence. 20 C.F.R. § 404.945(3). Assessing the record as a whole "helps to ensure that the focus in evaluating an application does not unduly concentrate on one single aspect of the claimant's history, if that one aspect does not reasonably portray the reality of the claimant's circumstances." *Rogers*, 486 F.3d at 249. If the ALJ examined the record as a whole and the ALJ's decision is supported by substantial evidence, then this Court must affirm the ALJ's decision, even if the Court might have decided the case differently. *Listenbee*, 846 F.2d

at 349.

Here, the ALJ took all relevant medical evidence into account. The ALJ methodically examined the entirety of the record when assessing Plaintiff's RFC. (Tr. 47-52). The ALJ explained the guidelines for evaluating Plaintiff's symptoms and then detailed his reasoning for concluding that Plaintiff's subjective complaints were not entirely credible. (Tr. 48-50). The ALJ detailed Plaintiff's medical history and evaluated all objective medical evidence and explained his reasons for weighing the medical-opinion testimony of the relevant medical sources. (Tr. 48-52). The ALJ also considered Plaintiff's work history and his reported activities of daily living. *Id.*

The Plaintiff points to no helpful evidence that the ALJ ignored.[3] While the ALJ weighed the evidence contrary to how the Plaintiff preferred, the ALJ did not "fail[ ] to mention" or "analyze" the "evidence in the record." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 436 (6th Cir. 2013). Thus, the ALJ did not engage in any type of improper cherry-picking. Instead, he properly considered the record as a whole. Accordingly, the Court finds no error in the scope of the ALJ's analysis.

Second, the Plaintiff claims that "there is only one objective medical conclusion supported by substantial evidence, that being that [Plaintiff] had a non-union of his vertebrae as a result of the first surgery" and that the ALJ failed to accept that "undisputed evidence." (Doc. # 13-1 at 14). Presumably, Plaintiff is arguing that the diagnosis of a non-union required the ALJ to find that he was disabled. That argument, however, amounts to a request that the Court conduct a de novo review of the record, a task far beyond the Court's limited role in determining whether the ALJ's finding is supported by

---

[3] Again, Plaintiff's allegation that the ALJ ignored his non-union diagnosis is not supported by the record. (Tr. 49-50 at n.7, 8).

substantial evidence. *See Roberts v. Astrue*, No. 1:09-cv-1518, 2010 WL 2342492, at *9 (N.D. Ohio June 9, 2010). Again, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996). Substantial evidence exists to support the ALJ's decision, and the Court's review must stop there.

### 4. There is no new, material evidence that requires the case to be remanded.

Typically, new evidence forms the basis for a new application, but is irrelevant to the Court's substantial evidence review. The Sixth Circuit has held that "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). Accordingly, the Court is "not in the position to consider new evidence in 'deciding whether to uphold, modify, or reverse the ALJ's decision.'" *Miller*, 811 F.3d at 839 (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). However, "consideration of new evidence may be appropriate on remand if the claimant can show that the new evidence 'is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Miller*, 811 F.3d at 839 (citing 42 U.S.C. § 405(g)). Although Plaintiff fails to specifically request remand pursuant to Sentence Six of § 405(g), the Court will construe his arguments regarding new evidence as such.[4]

---

[4] Plaintiff's other arguments, which concerned whether substantial evidence supported the ALJ's decision, sought remand under Sentence Four of § 405(g). "Section 405(g) plainly authorizes two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y Health & Hum. Serv.*, 17 F.3d 171, 174 (6th Cir. 1994); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991) (concluding that Congress' intended to limit the district court's authority to enter remand orders to these two types). While a Sentence Four remand divests the district court of

Sentence Six addresses situations "where a claimant submits new evidence that was not presented to the ALJ but would alter the ALJ's ultimate decision." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012). Sentence Six states:

> "The court … may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both…"

42 U.S.C. § 405(g). "[T]he burden of showing that a remand is appropriate is on the claimant." *Foster*, 279 F.3d at 357 (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

In his Motion for Summary Judgment, Plaintiff claims that the Appeals Council erred by refusing to consider evidence submitted subsequent to the hearing, which "provided further corroboration that there was a non-union of the spinal vertebrae even though the evidence was material and not available at the time the hearing took place." (Doc. # 13-1 at 18).

Plaintiff's evidence does not warrant a remand under Sentence Six. Evidence is "new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Foster*, 279 F.3d at 357. Because the medical records came into existence after the administrative hearing, the evidence is "new" and "good cause" exists to excuse Plaintiff's "failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id*. Nevertheless, even though the evidence is "new," it is not

---

jurisdiction "except to the extent necessary to resolve the application of attorney's fees," the court retains jurisdiction when remanding the case pursuant to Sentence Six. *See Booth v. Astrue*, No. 11-cv-191-JBC, 2012 WL 3027112, at *3 (E.D. Ky. July 24, 2012) (*citing Smith v. Halter*, 246 F.3d 1120 (8th Cir. 2001)); *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 841 (6th Cir. 2006).

"material." "[E]vidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984)); *see also Bass*, 499 F.3d at 513.

Plaintiff claims that the "evidence is material since it shows the further corroboration that [Plaintiff] did have a non-union that took place after the first surgery." (Doc. # 13-1 at 18). But, evidence regarding the possible non-union was already in the record at the time of the ALJ's hearing. In fact, the ALJ referenced the alleged non-union twice in his decision. (Tr. 49, 50 n.7). The value of the new evidence, according to Plaintiff, is that it is "corroborative." (Doc. # 13-1 at 18). "[M]erely cumulative" evidence, however, is "not 'material' within the meaning of 42 U.S.C. § 405(g) and contain[s] nothing that would cause the ALJ to change his opinion." *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990). "Therefore, a remand to consider" this new, corroborative evidence is "unnecessary" because there is not a significant possibility that the additional evidence would change the Commissioner's decision. *Id.*

## III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 13) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 18) is hereby **GRANTED**; and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 25th day of June, 2018.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\SocialSecurity\MOOs\Covington\17-160 Ransom MOO.docx